UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARGARET JACOBS, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-05-01632 |
| | § | |
| JO ANNE BARNHART, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM AND ORDER

Pending before the Court in this appeal from a denial of Social Security disability benefits is Plaintiff's Motion for Summary Judgment. After considering the parties' filings and the applicable law, the Court finds that the motion, Docket No. 13, should be and hereby is **GRANTED**.

### I. BACKGROUND

Plaintiff Margaret Jacobs was insured for disability benefits under Title II of the Social Security Act through September 30, 2002 (her "last-insured date"). In December 2002, Jacobs applied for further benefits but was denied, due to her failure to demonstrate the onset of disability before her last-insured date. She protectively filed a claim for a Period of Disability and Disability Insurance Benefits in November 2003, asserting an inability to work stemming from diabetes, hypertension, stomach hernia, spondylolysis, allergies, severe constipation, and incontinence. Plaintiff is also morbidly obese and has maintained complaints of back and joint pain.

A hearing was held on the issue of Jacobs' benefits claim before an administrative law judge ("ALJ") on September 2, 2004. Jacobs, then fifty-two years old, testified at the hearing, as did Charles Poor, a vocational expert ("VE"). During the hearing, Jacobs described the effects of

her physical symptoms, including the disruptive nature of her incontinence; the several hours each day that she spends lying down, because of her back pain; and her limited ability to lift and carry objects or otherwise use her hands, due to carpal tunnel syndrome.  She also outlined her previous work experience as a senior clerk (1977-1993) and a general file clerk (1994-1996),[1] and it was agreed among the parties that Jacobs' past relevant work consisted of 1) senior clerk, 2) file clerk, 3) mail clerk, and 4) day care worker/babysitter.  Under questioning from the ALJ, the VE testified that, if a claimant were limited to sedentary work as defined by the Social Security Commissioner, he or she would not be able to perform any of Plaintiff's past relevant work, but some jobs using Plaintiff's transferable skills would remain open.[2]  The VE further testified that none of these jobs would be available if a claimant were additionally limited by an inability to use his or her hands constantly.

In a decision issued on September 22, 2004, the ALJ denied Jacobs' claim for disability benefits.  He found that Jacobs did have some severe impairments: obesity, lumbar spine problems, diabetes, hypertension, some evidence of artherosclerosis, and cardiomegaly.  However, the ALJ determined that these impairments did not meet or medically equal any of the listed impairments specified in the Social Security regulations.  Proceeding to the required analysis of Jacobs' residual functional capacity ("RFC"), the ALJ disagreed not only with Jacobs' assessment of her own capacity (finding that her allegations regarding the extent of her limitations were not totally credible), but also with the RFC analysis provided by Jacobs' own physician, Dr. Victoria Clayton.[3]  The ALJ found that Plaintiff retained the RFC to perform light

---

[1] The record also shows that Jacobs worked as a self-employed babysitter and day care provider from 1999 to 2002.
[2] The VE provided examples of jobs that would utilize Jacobs' transferable skills, including general office clerk, credit authorizer, and data keyer.  According to the VE, about 25% of these jobs might remain available to a claimant who was limited to sedentary work.
[3] Based chiefly on Jacobs' gross obesity, back problems, and carpal tunnel syndrome, Dr. Clayton reported in her RFC, dated August 26, 2004, that Jacobs could not walk a single city block without resting; could sit for no more than fifteen minutes continuously and stand for no more than five minutes; could sit, stand, and walk for fewer than

work, meaning that she could lift and/or carry ten pounds frequently and twenty pounds occasionally, could stand and/or walk for about six hours in an eight-hour work day, and sit for about six hours in an eight-hour work day. Based on this RFC, the ALJ concluded that Jacobs could perform her past relevant clerical work, and that she was not under a disability.

The Social Security Appeals Council denied review of the ALJ's decision in April 2005. Plaintiff filed the instant case in May 2005, maintaining that the ALJ erred in denying her claim for benefits.

## II.   ANALYSIS

### A.   Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id*.

### B.   Standard of Review

Judicial review of an ALJ's denial of disability benefits is limited to determining "whether the decision is supported by substantial evidence in the record and whether the proper

---

two hours in an eight-hour work day; could lift weights of five and ten pounds only occasionally; used a walker for assistance; and was severely limited in her ability to work. R. at 267-72.

legal standards were used in evaluating the evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). "It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.* (internal quotation marks omitted) (citing *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973); *Payne v. Weinberger*, 480 F.2d 1006 (5th Cir. 1973)).

### C.     Legal Standard

A disability claimant bears the initial burden of proving that she is disabled. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). A person claiming a disability must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, "[a] claimant is eligible for benefits only if the onset of the qualifying medical impairment began on or before the date the claimant was last insured." *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990). In the instant case, Plaintiff bears the burden of demonstrating that a qualifying medical impairment began on or before September 30, 2002.

> The Court evaluates a disability claim via a five-step process, as follows:
>
> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in

>  Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Villa*, 895 F.2d at 1022). "A finding that a claimant is not disabled at any point in the five-step process is conclusive and terminates the . . . analysis." *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

### D.    Jacobs' Claim

With respect to Jacobs' claim for benefits, the Court finds that the ALJ failed to apply proper legal standards at step four of the disability analysis. First, the ALJ did not appropriately weigh the RFC provided by Jacobs' treating physician. Second, the ALJ did not meaningfully consider Jacobs' obesity in independently determining her RFC.

#### 1.    Dr. Clayton's RFC analysis

The ALJ did not properly evaluate the RFC provided by Plaintiff's treating physician. The ALJ failed to perform the required six-step analysis to determine the weight to accord to Dr. Clayton's opinion, and gave her views virtually no weight.

The first step in evaluating a treating physician's medical opinion is to determine whether, based on the record, it should receive *controlling* weight. *See* 20 C.F.R. § 404.1527(d)(2) ("Generally, we give more weight to opinions from your treating sources . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). If the ALJ finds that the treating physician's opinion should not receive controlling weight, he or she must apply six factors articulated in the regulations:  1)

length of the treatment relationship and the frequency of the examination; 2) nature and extent of the treatment relationship; 3) supportability; 4) consistency; 5) specialization; and 6) other factors.  *Id.*; *see also Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) ("an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2).") (emphasis in the original).

It is inarguable that the ALJ, after finding Dr. Clayton's RFC to be unsupported by record evidence, did not perform the detailed, six-step analysis required by the regulations and under *Newton*.  The ALJ outlined the six factors, R. at 33, but addressed only supportability, writing that "there is no objective medical evidence of record to support [the limitations indicated in Dr. Clayton's RFC], and it appears to be based solely on the claimant's subjective complaints," and "[t]hus, the claimant's treating physician's opinion appears to be greatly exaggerated." (R. at 32, 33).[4]  There is no indication in the administrative decision of any effort to analyze the other five factors.  Therefore, the ALJ omitted five steps of the required *Newton* analysis.

Furthermore, the ALJ erred in dismissing Dr. Clayton's RFC so quickly.  Even if a treating physician's opinion is not given controlling weight, it should receive due weight, and often even "the greatest weight."  *Newton*, 209 F.3d at 456 (quoting Social Security Ruling 96-2p, 61 Fed. Reg. 34,490, 34,491 (July 2, 1996)); *see also Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980) (a physician's view is evidence "entitled to great weight.").  In sidestepping Dr. Clayton's RFC after only a cursory analysis thereof, the ALJ gave her opinions virtually no

---

[4] Even in addressing the supportability factor, the ALJ's analysis is questionable.  The administrative record demonstrates a long-standing, consistent pattern of Plaintiff's complaints and diagnoses supporting her claim of severe, recurring back pain and difficulty with standing and walking.  In concluding that "there is no objective medical evidence of record" to support Dr. Clayton's RFC, the ALJ cites to notes from only one examination, in July 2003, during which Plaintiff rated her pain at a level of eight out of ten.  The Court observes that examination notes from August 2003 indicate that Plaintiff is again "complaining of recurrent low back pain," and rates her pain at ten out of ten.  R. at 141, 142.

weight.  *See Newton*, 209 F.3d at 455 (finding error when "[i]n actuality, the ALJ gave Pertusi's opinions *no* weight.").  The Fifth Circuit has held that an ALJ may decrease the weight afforded to the opinions of treating physicians only if there is good cause to do so.  *Leggett v. Chater*, 67 F.3d 558, 565-66 (5th Cir. 1995).  According to the *Leggett* court, good cause justifies "disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence."  *Id.* at 566 (internal quotation marks omitted).  As already mentioned, substantial record evidence tends to support at least some of the conclusions in Dr. Clayton's RFC, especially with regard to Jacobs' back symptoms, and the ALJ offered only one subset of notes from a single examination to refute the credibility of the RFC.  *See supra* note 4.  In the Court's view, the ALJ did not adequately show good cause to justify his quick dismissal of Dr. Clayton's RFC.

Because of the failure to perform the six-step *Newton* analysis, as well as the unwarranted haste in discounting the treating physician's opinions, the Court finds that the ALJ did not apply proper legal standards at step four of the disability analysis.

### 2.     Consideration of Plaintiff's obesity

The Court further finds that the ALJ committed error in omitting a substantive consideration of Plaintiff's obesity from his independent determination of Plaintiff's RFC.  According to the regulations, "when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity."  20 C.F.R. pt. 404, subpt. P, App. § 1.00(Q). In determining Plaintiff's RFC, the ALJ did not consider any additional and cumulative effects of her obesity; at most, he simply

mentioned her condition, writing that Jacobs "reported her height as five feet and nine inches and her weight was 295 pounds."[5] The ALJ's failure to discuss Jacobs' severe weight problems and their effect on her other impairments would seem to cast doubt on his independent determination of her RFC, including his finding that Jacobs was able to "stand and or [sic] walk about six hours in an eight-hour workday." R. at 34. At the very least, the omission constitutes error.

## III. CONCLUSION

Because the ALJ erred in impermissibly discounting the RFC provided by Jacobs' treating physician and in failing to consider Jacobs' obesity in his own RFC analysis, Plaintiff's motion for summary judgment is **GRANTED**, and this case is **REMANDED** to the ALJ for further proceedings not inconsistent with this Memorandum and Order.

**IT IS SO ORDERED**.

**SIGNED** this 29th day of September, 2006.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT**

---

[5] According to the record, Jacobs is actually only five feet and five inches tall. *E.g.*, R. at 107. The transcript of the administrative hearing indicates that Jacobs testified that her height was five feet and five inches. R. at 310.